valid against any third person. Section 3545, C. O. S. 1921, defines third persons as all those who are not parties to an obligation or transaction.

It may be assumed that appellant's mortgage was acknowledged on the same day that appellee's mortgage was filed for record. The question remains whether the fact that the recording of appellee's mortgage antedated that of appellant gave appellee a prior lien.

Two decisions by the Oklahoma Supreme Court are relied upon by appellant. One of them is Oklahoma State Bank v. Burnett, 65 Okl. 74, 162 P. 1124, 4 A. L. R. 430, which involved a question of priority between a judgment creditor and mortgagees. It was held, upon a review of the state decisions, that the recording statute was inapplicable to a judgment lien, that it attached only to the interest of the mortgagor, and was therefore inferior to the liens of unrecorded mortgages. In the second paragraph of the syllabus, it is said that "The 'third person' * * * refers to one who is an innocent purchaser for value, or an incumbrancer. * * *" The other citation is to Lunn v. Kellison, 66 Okl. 168, 153 P. 1136, where it was ruled that a judgment creditor was not a third person as designated by the statute, and his lien was subordinate to a title based on prior unrecorded deeds. It is obvious that these cases do not apply to a controversy between mortgagees. The other cases cited are also not in point.

In our opinion, the statute confers priority on appellee, because his mortgage was first filed for record. Considering the terms of the statute, the general rule doubtless prevails in Oklahoma, which appears in the text of 41 C. J. 549, as follows: "In the absence of special equities growing out of questions of notice, good or bad faith, want of consideration or the like, the rule of priority as between two independent mortgages on the same property, given at different times to different mortgagees, is that the one first recorded is a superior lien to the other, whether it was executed before or after such other. And this rule is not affected by the fact that one mortgage contains covenants of warranty, while the other does not, nor by the fact that the mortgage first recorded was given to secure a pre-existing debt, while the other was for a present consideration. * * *"

No showing was made in this case which would subordinate the lien of Bonner to that of Cassidy. The District Court properly accorded priority of lien to Bonner.

Counsel for appellee also urge that the mortgage of the latter is also superior because of the recital in appellant's mortgage that it is subject to incumbrances. It is unnecessary however to consider this question.

Our conclusion is that the decree of the District Court was right, and it is accordingly affirmed.

### WEZEL & NAUMANN AKTIENGESELLSCHAFT v. MORGAN LITHOGRAPH CO.

### No. 40.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1931.

The following is the opinion of the District Court (Frank J. Coleman, District Judge):

The only question presented is whether the patent in suit is valid. It covers advertising signs made of corrugated paper which are manufactured by printing designs on flat paper with a distortion which is rectified by the subsequent corrugation, and then pasting the back of the corrugated paper upon a flat paper so as to prevent the ridges from spreading. The device has two advantages in that the optical effect is improved and the signs may be placed with greater convenience than flat ones. They have a somewhat plush-like appearance due in part to the shading of the ridges and to the fact that when viewed obliquely the signs nevertheless present some surface of the corrugations at right angles to the line of vision. Also, since they are flexible, but in only one direction, due to the corrugations and the flexible background, they support themselves when standing, and at the same time may be accommodated to spaces laterally.

The idea of them was originated by the patentee in 1924, and they had never been either used or made before that time. A patent covering it was applied for in Germany on December 9, 1924, which must be taken as the effective date of the invention, and thereafter patents were issued not only in Germany and in the United States, but in six other countries. The patent here was applied for June 12, 1925, and granted about two years later. In the meantime, a considerable business in making and selling the signs has been built up by the plaintiff, which is the patentee's successor in interest, but principally in Europe, because in this country they have not yet proved popular. In a period of four and a half years a total of 769,000 meters of such advertising matter was sold for approximately 1,145,000 Reichmarks.

The defendants, or some of them, commenced making and selling signs here similar to the plaintiff's in 1927, and it is undisputed that they clearly infringe the patent if it is valid. The attack upon it is based on three grounds: First, that the disclosure is insufficient to support the claims; second, that the latter are anticipated by prior United States patents; and, third, that in any case, what the patentee did was not invention.

There are three claims of which one is for the method of manufacture of the signs and two are for the product. Each of them sets forth the three elements of (1) printing the design with a distortion on a flat sheet, (2) thereafter corrugating the sheet, and (3) finally pasting a flexible flat sheet to the back of it. In the method claim the sheets are not expressly stated to be of paper though the back sheet is described as flexible; nor is the distortion in the printing expressly stated to be rectified by the subsequent corrugation. In the product claims the sheets are described as of paper and they are not expressly stated to be flexible; but these claims do expressly state that the distortion in the printing must be such as to be rectified by the corrugation. None of the claims mentions how the distortion is to be obtained or how it is rectified by the corrugation.

The specification is very brief and even scant. It makes no mention of one of the two advantages of the product, viz., the greater convenience in placing it due to its one-way flexibility, but states as the sole object the improvement in optical effect. It mentions that the corrugated sheet is to be of paper, but does not specify that the back sheet is to be of that material, nor that it is to be flexible, though an illustrating figure shows the two sheets to be of about the same thickness. It should be noted that the second advantage of the product, viz., convenience in placing it, is attained only through the flexibility of the back sheet because the corrugations leave the sign stiff in one direction and flexible in the other, and if the back sheet is stiff this one-way flexibility is destroyed.

The specification makes only an incidental reference to distortion in connection with the illustrating figures, without describing how it is to be obtained or rectified by the corrugations. It does, however, contain illustrating figures showing a lateral distortion of a design on flat paper rectified by vertical corrugations. The undisputed evidence is that there were well-known methods of obtaining a one-way distortion in any degree desired. There was even a machine, a pantagraph, in general use for that purpose in connection with smaller designs; and where the size was too great, a system of rectangles and free-hand drawing was a recognized method.

The defendants contend that the disclosure is inadequate to support the claims in two respects: (1) Flexibility of the back sheet was not specified; and (2) no way

was described of obtaining the requisite distortion of the design and its subsequent correction by the corrugation. As to the flexibility of the back sheet, unquestionably any one skilled in the art, or even any ordinary man, who studied the specification and the figures, could see immediately how it was obtained. Since the specification described the corrugated sheet as made of paper and figure 2 showed the back sheet as having the same thickness, I believe that any reader would naturally assume that the back sheet was also made of paper, so that when he came to the claims which called for a flexible back sheet or a paper back sheet he would be unconscious of meeting something that had not already been mentioned in the specification.

Defendants point out that when the application was filed the proposed claims contained no requirement of flexibility in the back sheet, and that they were rejected as anticipated. After various amendments three new claims were allowed and they contained the flexibility requirement, but it does not clearly appear what effect this had in the allowance. Assuming, however, that it was a determining factor, I do not think it necessitated an amendment of the specification, because the requirement in the claims of flexibility of the back sheet constituted merely a limitation of the patent so that signs having other types of back sheets would not be included within it, and this limitation, even though not expressly mentioned in the specification would not invalidate the patent. Davis-Bournonville Co. v. Alexander Milburn Co. (D. C.) 297 F. 846. It would certainly seem contrary to justice to hold that this inadvertent omission which every one would unconsciously supply, and which could not possibly interfere with the practice of the art, should nevertheless deprive the patentee of the reward of his efforts. I think that would be carrying the technicality of the patent law too far.

■ As to the second ground for the alleged inadequacy of the disclosure, viz., that the patent does not show how the distortion of the design is obtained nor its nature and degree, nor how it is rectified by the subsequent corrugation, the specification and drawings show that the corrugations all run in one direction, and it would be apparent to even a child that if a design were printed in normal proportions on flat paper, which was subsequently corrugated, the final result would be a distortion in one direction, because the corrugations would shorten the design's dimensions in one direction. It is equally apparent that in order to have the final result normal the printing must exaggerate the dimensions in that direction, and that the amount of the exaggeration would depend on the size of the corrugations. I have not the slightest doubt but that any one skilled in the art would have had no difficulty in determining what degree of distortion was needed in the flat design, and how to obtain it from the normal. Neither charge of inadequacy of disclosure is sustained.

For anticipation defendants rely on three American patents, No. 386,780 and No. 401,-164 issued to Heineman and No. 1,566,690 issued to Perkins. In the first place, the Perkins patent was applied for on December 30, 1929, after the effective date of the invention of plaintiff's assignor, and I am not satisfied that defendant's evidence carried the Perkins invention back so as to be anterior. But even if it did, I believe it would be ineffective.

The Heineman patents cover a "three-way" sign which presents a different picture when viewed from different angles. It is a flat, inflexible sign having on its face sharp, perpendicular ridges, and three separate and distinct designs are placed on it, one on the right hand face of the ridges, one on their left hand face, and the third on the ground between the ridges. So that when the sign is viewed from the right only the design on the right hand faces of the ridges is visible, and similarly with the left, while directly in front the only design visible is the one on the ground between the ridges. The patents show a method of printing all three designs on a flat sheet and then folding the sheet in such a way as to make the necessary sharp ridges. There is no distortion of any of the designs, but merely a breaking of them so that space is left between their parts for the surfaces of the sign that are invisible from the correlative direction. After ridges are formed the disclosure provides for the pasting of a sheet on the back of the sign so as to hold them in place.

It seems plain to me that Heineman did not anticipate the patent in suit. His purpose was not to improve the optical effect of a sign of one design and to give a limited flexibility, but to make a trick sign that would present three separate designs de-

pending on how it was viewed; and his means was not the use of corrugation and distortion, but of perpendicular slats and a breaking of the undistorted designs.

The Perkins patent covers a method of making decorated crepe paper and has no particular application to signs. Prior thereto a design or decoration on crepe paper was put on it after the crêping process, with the result that the ink did not penetrate to the bottom of the crevices, the lines of the design did not conform to the irregularities of surface, and the ridges were crushed by the printing machinery. Perkins proposed printing the design on the flat paper before the crêping process and recognized that the design so printed would present quite a different appearance after the crêping. From the drawings annexed to his patent it cannot be said that the design as printed is a "distortion" of the design as finally presented; it seems, rather, that the crêping has so modified it as to present an entirely new design. The minute irregular ridges formed in the crêping, unlike the corrugations in plaintiff's signs, apparently conceal the design as printed and substitute one that could not be identified with it. I am unable to see how this is an anticipation of plaintiff's patent.

The patentee's work was invention, though not of a high order, and it truly involved a creative faculty. Corrugated signs had never been thought of before, and almost immediately a business of substantial size was built upon his idea.

If these conclusions are correct, the patent is valid and has been infringed by the Morgan Lithograph Company, and by at least some of the defendants in the other action. The interrelations between the defendants were so complicated that counsel suggested that the question as to which of them were liable be referred to the special master who would have to consider the same evidence anyway in connection with the accounting. Settle interlocutory decree accordingly.

Drury W. Cooper and Drury W. Cooper, Jr., both of New York City, for appellant.

Max D. Ordmann and William H. Kenyon, both of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

Decree affirmed on opinion below.

---

COMMISSIONER OF INTERNAL REVENUE v. BEN GINSBURG CO., Inc.

No. 12.

Circuit Court of Appeals, Second Circuit.

Argued Oct. 14, 1931.
Decided Nov. 2, 1931.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for petitioner.

Lloyd Church, of New York City (A. W. Gregg, of Washington, D. C., of counsel), for respondent.

William P. Smith, of Washington, D. C., amicus curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The respondent and Mendelson & Sussman Company, Inc., are New York corporations, both having offices in the city of New York. On January 2, 1927, the respondent's stockholders acquired all the capital stock of Mendelson & Sussman Company, Inc., in the proportions in which they owned shares of stock of the respondent, and thereby the